# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID ALAN FUQUA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>(1)  THE CITY OF ALTUS, a )<br>     political subdivision of the )<br>     State of Oklahoma; )<br>)<br>(2)  JACK SMILEY, )<br>     in his individual capacity; )<br>)<br>(3)  DEBBIE DAVIS, )<br>     in her individual capacity. ) | Case No. CIV-17-0115-HE |

## COMPLAINT

Plaintiff, David Alan Fuqua, for his causes of action against Defendants The City of Altus, a political subdivision of the State of Oklahoma, Jack Smiley, in his individual capacity, and Debbie Davis, in her individual capacity, alleges and states as follows:

### The Parties

1. Plaintiff David Fuqua ("Fuqua") is and at all relevant times hereto has been a citizen of the State of Oklahoma and a resident of the Western District of Oklahoma.

2. Defendant City of Altus ("City") is a political subdivision of the State of Oklahoma with its principal place of business in the City of Altus, State of Oklahoma.

3. Defendant Jack Smiley ("Smiley") is and at all relevant times hereto has been a citizen of the State of Oklahoma and a resident of the Western District of Oklahoma.

4. Defendant Debbie Davis ("Davis") is and at all relevant times hereto has been a citizen of the State of Oklahoma and a resident of the Western District of Oklahoma.

## Jurisdiction and Venue

5. This Court has personal jurisdiction over the Defendants because all of the Defendants are citizens of the State of Oklahoma.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Fuqua's claims arise under federal law. This Court has subject matter jurisdiction over Fuqua's state-law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court because all or a part of Fuqua's causes of action arose in this judicial district.

## Factual Allegations

8. Plaintiff Fuqua is in a protected classification under Title VII of the Civil Rights Act of 1964, as amended, as a member of The Church of Jesus Christ of Latter-day Saints.

9. Fuqua has a B.A. Degree from Oklahoma State University and a Master's Degree in Public Administration from the University of Oklahoma.

10. Fuqua began his career in city management in or around the year 1994, when he was hired as the City Manager of Cordell, Oklahoma.

11. On May 18, 2015, Fuqua and City entered into a written City Manager Employment Agreement.

12. When Fuqua was hired, the City Council for City expressed five (5) primary goals for Fuqua as the City Manager. The City Council expressed that it wanted Fuqua to

improve the City's finances and improve budget development and transparency, to implement the new water plan to improve the City's water supply, to develop a long-range plan for City operations, to improve staff morale, and to restructure the City's organizational structure.

13. At all times as the City Manager, Fuqua performed his duties competently, diligently, and professionally and worked toward completing the goals set out by the City Council. Indeed, within seven (7) months of becoming the City Manager, Fuqua had accomplished, or was well on his way to accomplishing, all of the goals that City had at the time it hired Fuqua.

14. In or around August, 2015, Fuqua hired Matt Wojnowski as the Assistant City Manager. Wojnowski was and is a member of The Church of Jesus Christ of Latter-day Saints.

15. In or around August, 2015, Fuqua approved the interview panel's recommendation to hire Johnny Barron as the City Engineer. Barron was and is a member of The Church of Jesus Christ of Latter-day Saints.

16. Fuqua hired Wojnowski and Barron because they were the most qualified applicants for the two positions. Wojnowski and Barron were the only two employees that Fuqua hired.

17. After Wojnowski and Barron were hired, Defendant Jack Smiley and Defendant Debbie Davis learned that Fuqua, Wojnowski, and Barron were all members of The Church of Jesus Christ of Latter-day Saints.

18. After Smiley and Davis learned that Fuqua, Wojnowski, and Barron were members of The Church of Jesus Christ of Latter-day Saints, Davis told Smiley that Fuqua "is a bad man" and that she considered him to be "the Anti-Christ."

19. After Smiley and Davis learned that Fuqua, Wojnowski, and Barron were members of The Church of Jesus Christ of Latter-day Saints, Smiley and Davis conspired and worked together in a common scheme to cause Fuqua's termination because of his religious beliefs as a member of The Church of Jesus Christ of Latter-day Saints.

20. Davis began a campaign of harassment against Fuqua by spreading lies about him to other employees and elected officials of Defendant City. Upon information and belief, Davis stated that Fuqua influenced or coerced HR Director Angie Murphy into hiring Mormons, that Fuqua delayed the hiring of the electric superintendent and fire chief because Fuqua was holding out to hire Mormons, that Fuqua wanted to replace all City employees with Mormons, that Fuqua's "days are numbered," and that she would "see to it" that Fuqua would be terminated. Davis spoke about Fuqua's decision to hire two Mormons so often that it became known as the "Mormon thing." Upon information and belief, Davis made these and other statements to various City employees and elected officials, including members of the Altus City Council.

21. Smiley began to accuse Fuqua of exposing the City to liability for using a keystroke software on the workplace computer of another City employee, Jan Neufeld. Smiley knew that Fuqua did not expose the City to any liability because he was told that was not illegal and that it was lawful to use the keystroke software, but Smiley made false statements to the City Council that the City was exposed to liability because of Fuqua's

use of the keystroke software. Smiley was motivated by religious animus against Fuqua because of his religion and not by any concern about legal liability.

22. On November 3, 2015, the City Council placed an item on the Agenda of a City Council Meeting to discuss potential employment actions against Fuqua, including potential termination.

23. During the November 3, 2015 meeting, the City Council held an executive session to discuss Fuqua's continued employment and performance. The City Council insinuated that Fuqua had hired a Mormon candidate, rather than another candidate who was not Mormon (Larry Parnell), by asking Fuqua, "Why didn't you hire Larry Parnell?" Parnell had applied numerous times with the City of Altus, twice with the City Council and the Council did not ever advance Parnell to the final round of interviews.

24. Following the executive session, Fuqua told Councilman Dwayne Martin that he did not understand why he was experiencing so much trouble from the City Council. Martin stated to Fuqua that "You do know, David, you've been dealing with it your whole life." Fuqua responded by stating, "You mean because I'm LDS?" Martin confirmed that that was what he meant.

25. On December 1, 2015, the City Council again placed an item on the Agenda of a City Council Meeting to discuss potential employment actions against Fuqua, including potential termination.

26. Like Davis and Smiley, certain City Council members were motivated by religious animus to cause Fuqua's termination. Following the two executive sessions held on November 3 and December 1, 2015, the City Council created a "Plan of Improvement"

for Fuqua. The "Plan of Improvement" stated that Fuqua had "articulated a long term vision and [had] outlined goals for the growth and development of the City," but that the City Council was concerned that his ability to successfully achieve the goals might be adversely impacted because "certain actions you have taken in the area of recruitment and hiring of new managerial employees could be viewed by others as expressing favoritism towards specific individuals to the detriment of other candidates."

27.     The "certain actions" referred to by the City Council was Fuqua's decision to hire individuals who happened to be members of The Church of Jesus Christ of Latter-day Saints.

28.     On January 14, 2016, the City Council placed an item on the Agenda of a City Council Meeting to discuss potential employment actions against Fuqua, including potential termination.

29.     At the January 14, 2016 meeting, the City Council voted to terminate Fuqua's employment. The City Council acted in reliance on the actions and recommendations of Defendants Smiley and Davis and/or on its own religious animus.

30.     The day before the January 14, 2016 meeting when Fuqua was terminated, Defendant Davis attempted to blackmail Angie Murphy, the head of the City's Human Resources Department. Davis stated to Murphy that "they" (City Council and Mayor Smiley) want you to say that Fuqua "influenced your opinion" into hiring Wojnowski and Barron because they were Mormons. Davis insinuated that if Murphy would not say this, then she would cause Murphy's termination.

31. Following Fuqua's termination, representatives from the City told the local newspaper that Fuqua was terminated "for cause," which the City and its representatives knew was false. Fuqua was not terminated for cause, as he was paid severance benefits pursuant to his written employment agreement, which would not have been available if he were terminated for cause. As a result, an article was published in the local newspaper falsely stating that Fuqua had been fired for cause.

32. Following his termination, Fuqua timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. Fuqua received a Notice of Suit Rights, and this lawsuit is brought within 90 days of receipt of the Notice of Suit Rights.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT CITY ONLY – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED: RELIGIOUS DISCRIMINATION**

33. Plaintiff incorporates by reference Paragraphs 1-32 as though set forth in full herein.

34. Plaintiff was in a protected classification under Title VII as a member of The Church of Jesus Christ of Latter-day Saints.

35. Plaintiff performed his job duties and responsibilities in a satisfactory manner as alleged above.

36. Despite his satisfactory job performance and his qualifications for the position of City Manager, Plaintiff was terminated on or around January 14, 2016. Plaintiff's termination was significantly motivated by Plaintiff's religious beliefs as a member of The Church of Jesus Christ of Latter-day Saints, and to the extent that the City

Council was not motivated by Plaintiff's religion, it relied on the opinions of subordinate employees who were motivated by animus towards Plaintiff's religion.

37. After Plaintiff was terminated, the position remained open to similarly qualified applicants and the position was filled by an individual outside of Plaintiff's protected class, i.e. an individual who was not a member of The Church of Jesus Christ of Latter-day Saints.

38. Any reason given by the Defendant for Plaintiff's termination is a mere pretext and cover-up for intentional discrimination as described by the factual allegations set forth above.

39. As a direct and proximate result of Defendant City's intentional religious discrimination against Plaintiff, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his professional reputation, and loss of enjoyment of life, all to his damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

WHEREFORE Plaintiff David Alan Fuqua prays for judgment against Defendant The City of Altus, a political subdivision of the State of Oklahoma, as follows:

(1) That Defendant City be ordered to make Plaintiff whole by providing all the remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2) That Defendant be enjoined and restrained from further acts of discrimination against Plaintiff;

(3) That Defendant be ordered to pay Plaintiff economic and compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(4) That Defendant be ordered to reinstate Plaintiff to his former position of City Manager as an equitable remedy authorized by Title VII;

(5) That in lieu of reinstatement, Defendant be ordered to pay Plaintiff front pay for a period of years as determined just and equitable by the Court;

(6) That Defendant be ordered to pay Plaintiff's costs as authorized by law, including a reasonable attorney's fee;

(7) That Defendant be ordered to pay pre-judgment interest in accordance with the proof at the time of trial;

(8) That Defendant be ordered to pay post-judgment interest; and

(9) For any and all further make-whole relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT CITY ONLY – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED: HOSTILE WORK ENVIRONMENT

40. Plaintiff incorporates by reference Paragraphs 1-39 as though set forth in full herein.

41. Plaintiff was qualified for his job and performed all of his duties and responsibilities in a satisfactory manner as alleged above.

42. The City of Altus workplace was permeated with discriminatory intimidation, ridicule, and insult based on Plaintiff's religion as a member of The Church of Jesus Christ of Latter-day Saints as alleged above.

43. The discriminatory intimidation, ridicule, and insult was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment as alleged above.

44. The discriminatory intimidation, ridicule, and insult was unwelcome and unwanted because Plaintiff did not solicit or incite the conduct and he regarded it as undesirable and offensive.

45. The discriminatory intimidation, ridicule, and insult was sufficiently severe or pervasive, in both subjective and objective terms, to create an objectively hostile or abusive work environment that altered the terms and conditions of Plaintiff's employment.

46. Defendant City knew or should have known about the harassment as described herein, had the authority to control the harassers' conduct or otherwise protect Plaintiff from the harassment, but it failed to take prompt and appropriate corrective action, and instead terminated Plaintiff, the victim of the severe or pervasive harassment.

47. As a direct and proximate result of the hostile work environment, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his professional reputation, and loss of enjoyment of life, all to his damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

WHEREFORE Plaintiff David Alan Fuqua prays for judgment against Defendant The City of Altus, a political subdivision of the State of Oklahoma, as follows:

(1) That Defendant City be ordered to make Plaintiff whole by providing all the remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2) That Defendant be enjoined and restrained from further acts of discrimination against Plaintiff;

(3) That Defendant be ordered to pay Plaintiff economic and compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(4) That Defendant be ordered to reinstate Plaintiff to his former position of City Manager as an equitable remedy authorized by Title VII;

(5) That in lieu of reinstatement, Defendant be ordered to pay Plaintiff front pay for a period of years as determined just and equitable by the Court;

(6) That Defendant be ordered to pay Plaintiff's costs as authorized by law, including a reasonable attorney's fee;

(7) That Defendant be ordered to pay pre-judgment interest in accordance with the proof at the time of trial;

(8) That Defendant be ordered to pay post-judgment interest; and

(9) For any and all further make-whole relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS SMILEY AND DAVIS – VIOLATION OF 42 U.S.C. § 1983

48. Plaintiff incorporates by reference Paragraphs 1-47 as though set forth in full herein.

49. The First Amendment to the United States Constitution prohibits governmental agents from taking actions that prohibit the free exercise of religion. According to the Supreme Court's decision in Cantwell v. State of Connecticut, 310 U.S. 296 (1940), the free exercise clause embraces the freedom to believe and the freedom to act. The Supreme Court held that the freedom to believe "is absolute."

50. Smiley and Davis' actions as described herein violated Plaintiff's absolute constitutional right to believe in the teachings and scripture of The Church of Jesus Christ of Latter-day Saints by causing his termination because of Plaintiff's beliefs and religion.

51. Smiley and Davis were acting under color of law at all relevant times described herein.

52. The law was clearly established at the time of the events described herein by Cantwell and other decisions.

53. Based on Cantwell and other decisions, it would have been clear to Defendants Smiley and Davis that their conduct in causing Plaintiff's termination because of his religion was unconstitutional under the circumstances.

54. Defendants Smiley and Davis acted intentionally, willfully, or in reckless disregard of Plaintiff's constitutional rights.

55. As a direct and proximate result of Plaintiff's free exercise of religious beliefs, Defendants Smiley and Davis caused Plaintiff's termination.

56. As a direct and proximate result of Plaintiff's free exercise of religious beliefs, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his professional reputation, and loss of enjoyment of life, all to his damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

WHEREFORE, Plaintiff David Alan Fuqua prays for judgment against Defendants Jack Smiley and Debbie Davis as follows:

(1) Actual damages, both economic and non-economic, in an amount in excess of $75,000.00 and in accordance with the proof at the time of trial

(2) For punitive and exemplary damages in an amount to be determined by the jury at the time of trial;

(3) For pre- and post-judgment interest as allowed by law;

(4) For his costs;

(5) For a reasonable attorney's fee; and

(6) For any and all further make-whole relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS SMILEY AND DAVIS-**
**INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

57. Plaintiff incorporates by reference Paragraphs 1-56 as though set forth in full herein.

58. Defendants Smiley and Davis knew of Plaintiff's contractual relationship with Defendant City to serve Defendant City as its city manager as well as his prospective economic advantage that he had in his position as city manager.

59. Defendants Smiley and Davis intentionally, willfully, and maliciously interfered with Plaintiff's contract of employment with Defendant City and the prospective economic advantage that Plaintiff had in his position as city manager in that these Defendants knew that Plaintiff was a member of The Church of Jesus Christ of Latter-day Saints and that they intentionally interfered with his contract because of unlawful discriminatory animus as described herein.

60. Defendants Smiley and Davis acted in bad faith and outside the scope of their employment, and their actions were not in the best interest of Defendant City.

61. As a direct and proximate result of these Defendants' unprivileged, intentional, malicious, and willful interference as aforesaid, Plaintiff has suffered economic loss, mental anguish and emotional distress, anxiety, sleeplessness, humiliation, embarrassment, injury to professional reputation, and lost enjoyment of life, all to his damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

62. Plaintiff also seeks punitive and exemplary damages against Defendants Smiley and Davis.

WHEREFORE Plaintiff David Alan Fuqua prays for judgment against Defendants Jack Smiley and Debbie Davis, and each of them, jointly and severally, as follows:

(1) For his actual damages in a sum in excess of $75,000.00, and in accordance with the proof at the time of trial;

(2)  For punitive and exemplary damages in an amount as determined by the jury at the time of trial;

(3)  For interest thereon as provided by law, both pre-judgment and post-judgment;

(4)  For his costs; and

(5)  For such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANT CITY ONLY – VIOLATION OF 42 U.S.C. § 1983 – MUNICIPAL LIABILITY**

63. Plaintiff incorporates by reference Paragraphs 1-62 as though set forth in full herein.

64. The final policymaker for Defendant The City of Altus is the City Council. The City Council's decisions are not subject to review by another official or governmental body.

65. Defendant's City Council made the final decision to terminate the employment of Plaintiff.

66. Defendant's City Council terminated Plaintiff because of his religious beliefs and an adherent of The Church of Jesus Christ of Latter-day Saints in violation of Plaintiff's First Amendment right to believe as described hereinabove.

67. The City Council's act of terminating Plaintiff's employment, as the final policymaker for Defendant City, is fairly attributable to Defendant City itself and can give rise to liability, even if the City Council's termination was in contravention of Defendant

City's own written policies. <u>Simmons v. Uintah Health Care Special Dist.</u>, 506 F.3d 1281 (10th Cir. 2007).

68. As a direct and proximate result of Defendant City's final policymaking authority terminating Plaintiff's employment, Plaintiff was deprived of his First Amendment constitutional right to freely exercise his religion and he sustained economic and non-economic damages.

WHEREFORE Plaintiff David Alan Fuqua prays for judgment against Defendant The City of Altus as follows:

(1) For actual damages in a sum in excess of $75,000 and in accordance with the proof at the time of trial;

(2) For a reasonable attorney's fee, expert fee, and costs;

(3) For pre-judgment and post-judgment interest as allowed by law; and

(4) For any other such and further relief as the Court deems just and proper, whether that is specifically requested herein or requested in accordance with the evidence developed at a later date.

Dated this 3rd day of February, 2017.

**WARD & GLASS, L.L.P.**

/s/ Barrett T. Bowers
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Barrett T. Bowers, OBA#30493
1601 36th Ave. NW, Ste. 100
**ATTORNEY'S LIEN CLAIMED** Norman, Oklahoma 73072
**JURY TRIAL DEMANDED** (405) 360-9700
(405) 360-7902 (fax)
**ATTORNEYS FOR PLAINTIFF**