# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID ALAN FUQUA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-17-115-HE |
| | ) | |
| THE CITY OF ALTUS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff David Alan Fuqua asserts claims against the City of Altus ("Altus"), Jack Smiley ("Smiley"), Debbie Davis ("Davis"), and Jan Neufeld ("Neufeld") based on his termination from the position of Altus City Manager. He asserts claims against Altus for religious discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964. He asserts § 1983 claims against Altus and the individual defendants for violation of his First and Fourteenth Amendment rights. He also asserts state law claims for intentional interference with a contractual relationship against the individual defendants.

Multiple summary judgment motions are pending. Plaintiff has moved for partial summary judgment as to the defense of failure to mitigate damages asserted by each defendant. Altus and the individual defendants have each filed motions seeking judgment as to the claims against them. Plaintiff has conceded the motions as to the hostile work environment claim and the state law claim for intentional interference with contract.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quotations and citation omitted).

Background

The bulk of the background facts and circumstances are undisputed. In May of 2015, plaintiff was hired as the City Manager for Altus. Defendant Smiley was the Mayor of Altus and a member of the city council. Defendant Neufeld was the Chief Financial officer of Altus. Davis was the elected City Clerk.

In August of 2015, plaintiff hired two individuals to serve as the city's Public Works Director and as the Assistant City Manager. Both of the persons hired, like plaintiff, are members of the Church of Jesus Christ of Latter-day Saints, informally called the Mormon Church. During this same time frame, plaintiff and defendant Neufeld had a fairly contentious relationship, with plaintiff issuing oral and written reprimands to Neufeld and ordering the installation of a key stroke monitor on her office computer.

While there are various factual disputes as to the circumstances, plaintiff's evidence is that both Neufeld and Davis were actively involved in city hall discussions of plaintiff's membership in the Mormon Church, concerned with a "Mormon Mafia", and that Davis believed plaintiff was, or may have been, trying to fire all the city employees and hire

Mormons. There is evidence that they shared those concerns with defendant Smiley, the mayor, and possibly with other council members.

In December of 2015, plaintiff was placed on a Plan of Improvement by the Altus City Council.[1] The plan identified as one of the grounds for concern "actions taken in the area of recruitment and hiring of new managerial employees" which "could be viewed by others as expressing favoritism towards specific individuals to the detriment of other candidates." Doc. # 78-23, p. 1.

On January 14, 2016, plaintiff's employment was terminated by a 6-3 vote of the City Council. Plaintiff contends that Neufeld and Davis sowed discord in city hall and with members of the City Council regarding his being a member of the Mormon Church. He contends Smiley was a driving force behind his termination and that his termination by the City Council was due to his status as a Mormon.

Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment as to defendants' asserted defense of failure to mitigate damages, relying on evidence that he made 133 job applications over a period of several months since his termination. Defendants argue there is no proof of job-seeking activity in certain months and that plaintiff has not sought the full range of jobs that were potentially available to him. There is reason to doubt whether defendants are, or should be, serious about this defense, but, given its nature (essentially the <u>absence</u> of appropriate

---

[1]Altus has waived executive session privilege as to meetings from November 2015, through January 2016, to the extent that the sessions addressed plaintiff's employment. Doc. # 78, p. 11 n.1. References to filings with this court are to the CM/ECF document and page number.

3

job searching by plaintiff), the court concludes the issue is not subject to resolution on summary judgment. Plaintiff's motion will be denied.

## Altus Motion for Summary Judgment

Altus contends there is no direct evidence that plaintiff's termination was based on his religion and that plaintiff has not produced evidence sufficient to survive summary judgment when tested against the burden-shifting framework recognized by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under Title VII, it is unlawful for an employer to "discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of McDonnell Douglas." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007).

The showing required under McDonnell Douglas has been characterized in different ways depending on the particular circumstances but, in general, it requires a plaintiff to make a prima facie showing (1) that he belonged to a protected class, (2) that he suffered an adverse employment action, and (3) that the adverse action occurred under circumstances supporting an inference of wrongful discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). Once the plaintiff does so, the burden shifts to defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by plaintiff." DePaula v. Easter Seals El Mirador, 859 F.3d

4

957, 970 (10th Cir. 2017). If this burden is met, plaintiff must then, to avoid summary judgment, produce evidence sufficient to support an inference that defendant's stated reason for the action is pretextual or not worthy of belief. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).

Here, viewing the evidence in the light most favorable to plaintiff, the court concludes he has produced direct evidence of discrimination based, at least in part, on his religion. Plaintiff testified that Dwayne Martin, a member of the city council, told plaintiff that the council had issues with his hiring of the two Mormons to key positions in the city and that he was placed on the council's agenda and ultimately terminated because of his religion.[2] Further, as noted above, one of the areas of concern in the plan of improvement developed by the city council for plaintiff was that "certain actions taken in the area of recruitment and hiring of new managerial employees could be viewed by others as expressing favoritism towards specific individuals to the detriment of other candidates." It is undisputed that the only individuals hired by plaintiff were the two individuals who were also Mormons. While the reference in the performance plan, by itself, likely falls short of "direct" evidence of wrongful discrimination, it at least makes clear that the hiring of the two Mormon's by plaintiff was, in some fashion, a focus of the city. In any event, in light

---

[2] *Martin disputes whether he made such statements and defendants claim the statements are inadmissible hearsay. Whether Martin made the statements will have to be resolved at trial. The statements are not hearsay, however, as Martin, in his capacity as a council member, is an agent of the city and the statements were made within the scope of that relationship. See Fed.R.Evid. 801(d)(2).*

5

of the evidence as to Martin's comments, there is direct evidence of wrongful discrimination here.

Since there is direct evidence of discrimination on a prohibited basis, it is unnecessary to employ the McDonnell Douglas burden shifting analysis. However, plaintiff's submissions would be sufficient if it was employed. Plaintiff has presented evidence supporting an inference that his religion was a motivating factor in his termination and that defendants' stated reasons for the termination were pretextual. The evidence includes testimony that plaintiff's religion was a major topic of discussion at city hall; that defendants Davis and Neufeld often had conversations about it, including ones with council members; and that plaintiff's performance improvement plan was directed, in part, to plaintiff's hiring decisions as to the two other Mormons. The statements attributed to Martin certainly support an inference that the termination was based on plaintiff's religion even if they are not viewed as "direct" evidence. Further, the factual disputes as to the validity of the stated grounds, coupled with the arguably shifting explanations for the termination, contribute to an inference of pretext.

Most of plaintiff's evidence is disputed by defendants but, for purposes of defendants' motions, the evidence must be viewed in the light most favorable to plaintiff. It is sufficient to create a justiciable issue of fact as to whether his termination by the city council was based on his religion. Moreover, as the termination decision was made by the city council and the council is the final policy-making authority for the City of Altus, a sufficient basis for municipal liability under § 1983 has been shown. "Municipal liability may . . . be based on the decisions of employees with final policymaking authority."

Brammer-Hoelter v. Twin Peaks Charter Academy, 602 F.3d 1175, 1189 (10th Cir. 2010) (citing Pembaur, 475 U.S. at 480-81; City of St. Louis v. Praprotnik, 485 U.S. 112, 123-27 (1988)).

The City's motion will be denied as to the Title VII and § 1983 claims.

## The Individual Defendants' Motions

Plaintiff asserts § 1983 claims for religious discrimination against defendants Smiley, Davis, and Neufeld. To establish a claim under § 1983, a plaintiff must show the violation of a right secured by the Constitution and laws of the United States and must show that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Here, it is undisputed that Smiley, Davis, and Neufeld were acting under color of state law and that the Constitution protects his right to free exercise of religion and equal protection. The question is whether plaintiff has offered evidence sufficient to show a violation of those rights by these defendants.

With respect to the motion of Jack Smiley, the mayor and council member, the court concludes the motion should be denied. While the evidence against him is thin, there is, as noted above, some direct evidence that the council's decision to terminate plaintiff was based on his status as a Mormon,[3] and it is undisputed that the mayor was a member of the council and voted to terminate the plaintiff. That evidence is sufficient, barely, to create a

---

[3] *Plaintiff has also offered evidence that another council member told plaintiff to be careful of Smiley and that Smiley was out to get him fired. But when offered against Smiley, that out of court statement is inadmissible hearsay.*

justiciable issue as to whether Smiley's actions contributed to a violation of plaintiff's rights.

Mayor Smiley has asserted the affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To resolve qualified immunity claims, a court must consider two elements: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." Clark v. Wilson, 625 F.3d 686, 690 (10th Cir. 2010) (citing Pearson, 555 U.S. at 815-16). As discussed above, the evidence is sufficient to create a question of material fact as to whether Smiley's conduct violated plaintiff's rights. Further, Smiley does not appear to contest that it is clearly established that a city may not discharge an employee on the basis of his religious beliefs and, in any event, the court has little difficulty in concluding that the pertinent right was clearly established in the present circumstances. Title VII plainly prohibits any "unlawful employment practice" in which the plaintiff's "religion . . . was a motivating factor for" that practice. 42 U.S.C. § 2000e–2(m). Further, "the same conduct can support a violation of § 1983 and Title VII," Taite v. Ramos, 618 Fed. Appx. 392, 395 (10th Cir. 2015) (citing Polson v. Davis, 895 F.2d 705, 710 (10th Cir. 1990), which is the situation in this case. Defendant Smiley has therefore not shown a basis for dismissing the claim against him on the basis of qualified immunity.

The claims against defendants Neufeld and Davis are more difficult to resolve because the standard is less familiar. Unlike Mayor Smiley, it is clear that Neufeld and Davis were not decision-makers nor were they supervisors of defendant. Further, it is undisputed that they had no formal role in the evaluation of plaintiff's performance or in the decision to fire him. However, § 1983 states that a person who "subjects, or causes to be subjected" a citizen to a violation of rights secured by federal law is subject to liability. As a result, a subordinate employee or other government actor may be liable if he or she "possessed a retaliatory motive which set in motion the events that ultimately led" to the violation of plaintiff's rights. Maestas v. Segura, 416 F.3d 1182, 1191 (10th Cir. 2005).

Here, there is ample evidence that defendants Neufeld and Davis were concerned with plaintiff's status as a Mormon and with his hiring of other Mormons, so there is ample basis for concluding a motive to retaliate against plaintiff on that basis. The harder question is whether there is evidence that they caused or "set in motion" the violation of plaintiff's rights within the meaning of Maestas and § 1983.

Maestas suggests that causation in this context requires something more than merely urging another to retaliate against a plaintiff. It identifies a number of situations where a defendant was deemed to have "set in motion" the necessary events and they all appear to contemplate some level of formal involvement in the eventual decision, such initiating an investigation, recommending the discharge, investigating the conduct, or instigating charges. 416 F.3d at 1191. As the Tenth Circuit later observed, the cases illustrate that the causation evidence necessary to hold a non-decision maker liable has been found in situations where the subordinate employee "either investigated the plaintiff's conduct or

9

instigated charges against him, *and* recommended that the plaintiff be discharged or demoted." Salazar v. City of Commerce City, 535 Fed. Appx. 692, 702 (10th Cir. 2013) (citing Maestas, 416 F.3d at 1191). Here, there is no evidence of that sort of involvement by either Neufeld or Davis. There is plenty of evidence that they agitated against plaintiff, or for his removal, on the basis of his religion, but there is none that suggests they played some formal role in the City's dealings with plaintiff. Complaints and gossip, even lots of it, do not arise to the level of involvement necessary to establish the necessary causative link.

Like the mayor, defendants Neufeld and Davis also assert qualified immunity as a defense. Plaintiff has not identified any case clearly establishing that these defendants' conduct was violative of plaintiff's rights. The "clearly established" determination must be made at the proper level of specificity. Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (courts must not "define clearly established law at a high level of generality"). Here, the cases do not make it clear that a non-supervisory employee unrelated to any formal investigative or discipline process could be held liable in these circumstances. So even if the court's conclusion was otherwise as to whether plaintiff's evidence shows a violation by defendants (i.e. the necessary causation), these defendants would still be entitled to qualified immunity.

The submitted evidence suggests that defendants Neufeld and Davis were highly focused on plaintiff's status as a Mormon, were motivated to retaliate against him on that basis, and made complaints based on that. However, for the reasons indicated, that conduct does not translate into § 1983 liability. The motions of these defendants will be granted.

Conclusion

For the reasons stated, plaintiff's motion for summary judgment [Doc. #77] is **DENIED**. The motion of the City of Altus [Doc. #78] is **GRANTED** as to the hostile work environment claim but otherwise **DENIED**. Defendant Smiley's motion [Doc. # 80] is **GRANTED** as to the interference with contract claim but otherwise **DENIED**. The motions of defendants Neufeld [Doc. #79] and Davis [Doc. #81] are **GRANTED**.

In light of these rulings, the parties' motion to enlarge deadlines pending a decision on the summary judgment motions [Doc. #97] is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 6th day of April, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE